### WILSON et al. v. METCALF.
### No. 6294.

Court of Civil Appeals of Texas.
Amarillo.

March 23, 1953.

Rehearing Denied April 27, 1953.

Harry Bunnenberg, Vernon, for appellants.

Mock & Kee, Wichita Falls, for appellee.

NORTHCUTT, Justice.

Appellee, Holland Metcalf, sued appellants, Jake Wilson and Robert Wilson, a partnership doing business as Wilson Wholesale Grocery, and Hoyt Edward Williams for damages done to appellees' truck and trailer. Appellee alleged that on or about June 27, 1951, and prior thereto, that Jake Wilson and Robert Wilson were the owners of a 1943 K11 International truck and an attached trailer, and at the same time appellee was the owner of a 1947 Dodge Two Ton Special truck with a Nabors flat bed trailer attached thereto. Appellee further alleged that about 1:00 a. m. on June 27, 1951, Billy Joe Word was driving appellees' truck and trailer in a northerly direction on U. S. Highway Number 81 about four and one-half miles south of Rhome, Texas. At the same time, Howard Edward Williams, employee and agent of Jake Wilson and Robert Wilson was driving the truck and trailer of Jake Wilson and Robert Wilson in a southerly direction on said U. S. Highway Number 81. As said trucks and trailers approached each other from opposite directions, a collision occurred between said trucks and trailers, and as a result of said collision, appellee's truck and trailer were so severely damaged that neither could be effectively repaired. Appellee further alleged the market value of the truck and trailer immediately prior to the collision was $3000, and the market value of the truck and trailer immediately after the collision and after the damage inflicted by defendants' negligence was not in excess of $400 as salvage. Appellee pleaded different acts of negligence and that same were a proximate cause of the injuries. The case was submitted to a jury upon 13 special issues and all of them were answered in favor of the appellee, plaintiff in the trial court. Upon the findings of the jury judgment was granted for appellee, plaintiff in the trial court. From such judgment, appellants, defendants in the trial court, perfected this appeal.

Appellants have made twenty-one assignments of error. The first nine assignments are presented together by the appellants, and they all deal with "no evidence", "insufficient evidence", and the verdict so contrary and opposed to the overwhelming and preponderating weight of all the evidence as to be clearly wrong and unjust as the same applies to Special Issues Nos. 6, 7, and 8. Special Issue No. 6 asked if appellants' driver was driving appellants' truck on the wrong side of the highway. Issue No. 7 asked if such act was negligence and No. 8 if the same was a proximate cause of the collision. Special Issue No. One asked if Williams was driv-

ing appellants' truck at a speed in excess of 45 miles per hour immediately prior to the collision. The jury answered "yes". Williams testified he was driving from 55 to 60 miles per hour, and could have been driving 70 miles per hour but he didn't think so. Special Issue No. Two inquired as to whether this speed was negligence, and the jury answered "yes". Special Issue No. Three asked if it was a proximate cause, the jury answered "yes". Special Issue No. Four asked if appellants' driver failed to keep a proper lookout, jury said "yes". Appellants' driver testified that just before the collision took place, he was leaning in the glove compartment getting a stick of chewing gum, and he guessed he was looking towards the glove compartment and probably took his eyes off the road for a moment. In reply to Special Issue No. Five, the jury answered that this failure to keep a proper lookout was a proximate cause of the collision. There was other testimony substantiating the finding of the jury on each of these issues as well as Special Issue No. 12; consequently, appellants' first ten assignments of error are overruled.

Appellants' Eleventh, Twelfth and Thirteenth assignments of error deal with "No evidence", "Insufficient evidence" and the verdict so contrary and opposed to the overwhelming and preponderating weight of all the evidence as to be clearly wrong and unjust as the same applies to Special Issue No. 3. The testimony of Williams, who was driving appellants' truck is that he was driving from 55 to 60 miles per hour, and could have been driving 70 miles per hour. This would be in violation of the law governing speed of Motor Vehicles of the State of Texas and would be negligence per se. There was other evidence to substantiate the verdict of the jury. Appellants' assignments of error Eleven, Twelve and Thirteen are overruled.

Appellants' assignments of error Fourteen through Twenty-one all have reference to the submission of Special Issue No. Nine, which reads as follows:

"What amount of money, if any, if now paid in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Holland Metcalf for the damage, if any, done to his truck and trailer on the collision in question as a direct and proximate result of the negligence, if any, of the defendants?"

The jury answered $2300. In connection with the submission of the above issue No. 9, the court instructed the jury as follows:

"In answering the foregoing issue, you are instructed that the measure of damage to be applied is the difference, if any, between the reasonable cash market value of the truck and trailer immediately prior to the collision and the reasonable cash market value of said truck and trailer immediately after such collision, in the vicinity where the collision occurred.

"The term 'reasonable cash market value', as used above, means that price which a property will bring when offered for sale in a usual and ordinary way by a person who is willing to sell, but not obligated to sell, and who exercises ordinary care and reasonable diligence to sell for the best price obtainable to purchasers who are willing to purchase, but who are not obligated to purchase, and who exercise ordinary care and reasonable diligence to purchase."

The general rule for measuring damages to personalty is the difference in market value immediately before and immediately after injury to such property at the place where damaged. Pasadena State Bank v. Isaac, 228 S.W.2d 127, 128, where the Supreme Court said:

"The basic reason underlying rules for the ascertainment of damages for any tortious act is a fair, reasonable, and proper compensation for the injury inflicted as a proximate result of the wrongful act complained of. The general rule for measuring damages to personal property is the difference in the market value immediately before and immediately after the injury to such property at the place where the damage was occasioned. This principle of law is of such universal application

that it would be trite to cite authorities from the many jurisdictions that follow the rule. See annotations in 169 A.L.R., p. 1075, et seq."

 An ultimate fact is the final resulting effect which is reached by the processes of logical reasoning from the evidentiary facts. The testimony introduced as to the value of the truck and trailer was as to the value immediately before the collision and the value immediately after the collision. No case has been called to our attention that shows the issue submitted as was in this case, and neither have we found any; but the court in the case of Thomas v. Goulette, Tex.Civ.App., 12 S.W.2d 829, 831, stated as follows:

"Complaint is made that the trial court in his instructions to the jury authorizing their consideration of the difference in the value of the automobile just before and after the injury, in arriving at the amount of damages, did not confine such consideration of value to that existing, if any, at the time and place of the accident, or in the vicinity thereof. The rule of law governing is such case may be stated to be that, where the injury to an automobile does not amount to a practical destruction of the car, or, in other words, where, after the injury, the car still has some value as such, the measure of damage is the difference in such value before and after the injury and at that place or in the vicinity thereof. The rule is not affected by the existence or nonexistence of a market value at such time or place. If there is a market value, same shall be applied. If not, then the actual or intrinsic value shall govern. Chicago, R. I. & G. R. Co. v. Zumwalt, Tex. Com.App., 239 S.W. 912; Alderete v. Cabello, Tex.Civ.App., 278 S.W. 950; Thompson v. Field, Tex.Civ.App., 164 S.W. 1115.

"It is further contended by appellant that there was no evidence of the value of the automobile after the injury to same to enable the jury to apply the proper measure of damages. This contention, we think, is support-

ed by the record. While plaintiff testified as to the value of the car before the injury to same, we fail to find any testimony as to the value of the car afterwards, nor was there evidence of any fact from which the jury could determine such value."

In the case of Northeast Texas Motor Lines, Inc., v. Hodges, 138 Tex. 280, 158 S.W.2d 487, 489 the Court said:

"It has never been the policy of the law to lengthen and complicate special issue charges by requiring trial courts to give issues that merely submit various phases or other shades of meaning of an issue already in the charge. It is required only that each controlling issue raised by the pleadings and the evidence be submitted once, fairly, simply and succinctly. Otherwise, such charge could be drawn out to interminable length confusing not alone to the jury but to court and counsel as well."

In Ft. Worth & R. G. Ry. Co. v. Coker, Tex.Civ.App., 142 S.W. 648, 649 it is stated:

"While we do not controvert the proposition that in many instances it is proper for the jury to estimate and determine the amount necessary to compensate the owner for injury to his property after witnesses have described the nature and extent of such injuries, yet we hold that, when the amount awarded appears to be large, it should at least be made to appear that it is less than the value of the property before it was injured, when it is not claimed that it was rendered worthless."

In the case of Campbell v. Johnson, 284 S.W. 261, 263 by the Court of Civil Appeals of Texas at Dallas, affirmed by the Commission of Appeals at 290 S.W. 526, said:

"Appellant, by appropriate assignment and propositions, contends that the court erred in submitting special issue No. 6 wherein the jury was instructed to find the difference, if any, between the cash market value of the

automobile immediately before and immediately after the collision, on the ground that there was no allegation as to the market value of the automobile before and after the collision.

"The petition having alleged a cause of action entitling appellee to recover for the injuries to his automobile, he was not required to allege the measure of damages for the reason that the court, under the facts, was required to apply the correct measure. This doctrine was recently announced by this court in the case of Black v. Nabarrette [Tex.Civ.App.], 281 S.W. 1087, as shown by the following quotation:

" 'The petition describes the household and kitchen furniture and alleges that same was destroyed by fire. These allegations of fact fixed the legal measure of damages and appellee was not required to allege any measure of damages. When appellee alleged that he was the owner and possessor of the described articles of household and kitchen furniture and that same were destroyed by fire through the wrongful and unlawful act of appellant, this laid the basis for the recovery of the damages that resulted to appellee by reason of appellant's said wrongful act and the fact that he alleged the value of said articles to be their "market value" did not affect appellee's right to have the court apply the correct measure of damages.' Citing International & G. N. R. R. Co. v. Gordon, 72 Tex. 44, 11 S.W. 1033; Harmon v. Callahan, Tex.Civ.App., 35 S.W. 705; Ara v. Rutland, Tex. Civ.App., 172 S.W. 993; St. L. S. W. Ry. Co. of Tex. v. Jenkins, Tex.Civ. App., 89 S.W. 1106.

"This assignment is overruled."

In this case at bar, it was claimed in the pleadings that the truck and trailer in question immediately prior to the collision had the cash market value of $3000 and only $400 immediately after the collision. The testimony introduced in evidence was as to the value immediately before and immediately after the collision. The ultimate fact to be determined (as to the amount of damages) was the difference in value of the truck and trailer immediately before and immediately after the collision. There being sufficient evidence to sustain such finding, we are not at liberty to disturb the same.

We have carefully read all of appellants' assignments and points, and we overrule them. We have reached the conclusion that the judgment of the trial court should be affirmed, which is now done.

On Motion for Rehearing.

PER CURIAM.

Appellants, in their motion for rehearing, assert that the Court of Civil Appeals erred as follows: In not holding that the evidence conclusively shows, as a matter of law, that appellee's truck was negligently driven on the wrong side of the highway at and prior to the time of the collision, and that such negligence was the proximate cause of the accident in question, there being no probative evidence to the contrary; in failing and refusing to hold that the appellee or his driver was contributorily negligent in failing to yield one-half of the highway to the appellants at and prior to the time of the collision; in failing and refusing to pass upon the question that the verdict of the jury, in answer to Special Issue Number 6, to the effect that appellants were operating their truck on the wrong side of the highway, is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust; in failing and refusing to pass on a question that the verdict of the jury, in answer to Special Issue Number 7, to the effect that appellants' driver was negligent in operating appellants' truck on the wrong side of the highway, is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. The same objection was urged as to the answer to Special Issues Number 8 and 12. Each and all of the assignments of error presented by appellants in their motion for rehearing were presented in their original presentation of the case in

this court, with the exception of this, that we did not consider the testimony in the light of King v. King, infra, and all of the same were overruled by the court.

In our original opinion we referred to the matter as assigned as error by the appellants, as, "no evidence", insufficient evidence", and "contrary and opposed to the overwhelming and preponderating weight of all the evidence as to be clearly wrong and unjust."

Mr. Williams, driver of appellants' truck and trailer, testified: at the time of the collision he was driving 55 or 60 miles per hour and could have been driving 70 but didn't think so; just before the collision he was leaning in the glove compartment on the truck that was about a yard from the steering wheel and that he had only his left hand on the steering wheel; that he was looking towards the glove compartment and took his eyes off of the road and that at the time of the impact didn't have his eyes on the road; when the collision happened he went over to the left side and went about half-way across the left side; appellants' left front fender was damaged; appellee's left front fender was not damaged and Wilson did not know what side of the road he was on at the time of the impact.

Mr. Word, driver of appellee's truck and trailer, testified: He was on the right side of the road as they were meeting and he was looking where he was going; he was driving on his side of the road; as they were meeting and everything looked all right just like were going to pass and then appeared as though Williams was coming at him and that just before the collision he saw the lights of William's truck turn over in Word's direction and on Word's side of the road.

In our original opinion, and in considering appellants' motion for rehearing, we have considered the evidence in this case in the light of King v. King, Tex.Civ.App., 244 S.W.2d 660 and are of the opinion that appellants' motion for rehearing should be overruled and the same is accordingly, in all things, overruled.